# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

JAMES SEMMENS                                                                PLAINTIFF

VS.                                          3:14CV01096-BRW

ROGER MATTIS, Secretary,
U.S. Department of Defense[1]                                                DEFENDANT

### ORDER

Pending is Defendants' Motion for Summary Judgment (Doc. No. 60). Plaintiff has responded and Defendant has replied.[2] For the reasons set out below, the Motion is GRANTED.

### I. BACKGROUND[3]

Plaintiff, a male in his late 60s with a 10% military disability, was hired as a "re-employed annuitant" (meaning he had previously worked for the government) for a GS 12 auditor position on June 4, 2012.

In a June 18, 2012 memo, Plaintiff's supervisor noted that he had met with Plaintiff to discuss the fact that several members of the staff had complained about Plaintiff asking them out on dates. He told Plaintiff that the office "did not run a dating service and that [Plaintiff] needed to keep his personal life out of the workplace."[4]

A July 9, 2012 "Memorandum for Record," noted that Plaintiff had been briefed on new performance standards and he "expressed concerns regarding his ability to perform at the GS 12

---

[1]The original complaint named Charles Hagel, Secretary of United States Department of Defense, but he has been replaced by Secretary Mattis.

[2]Doc. Nos. 70, 75.

[3]Unless otherwise noted, the facts in this section come from the parties' statements of material facts not in dispute. Doc. Nos. 70-2.

[4]Doc. No. 61-2.

1
Case 3:14-cv-01096 Document 77 Filed 04/04/17 Page 1 of 9 PageID #: 740

level."[5] Plaintiff "expressed an interest in being downgraded to the GS 9 level" and was told to make the request with the human resources department.[6] Plaintiff was reminded of the "expectations of the fully successful GS 12 position" and that he "should focus on completing the assignments in a timely manner . . . ."[7] Plaintiff signed the document.

On August 7 2012, Plaintiff was told he could resign or he would be terminated. The memorandum of termination reads:

> Your conduct during the first two months has included, but is not limited to, inappropriate sexual comments, lewd remarks to female employees within the office, inappropriate racial comments, lewd facial gestures, and the raising of your voice to an administrative employee. Within the first few days of your employment with our office, you needed to be counseled by the branch manager that this is a business office and not a "dating service." You have shown character traits that are unbecoming of a federal employee. This is apparent by the offensive remarks and other demeaning conduct that you have shown to your fellow co-workers.[8]

The memo also noted that Plaintiff's work performance was below average, and set out several examples. It pointed out that Plaintiff even asked to be moved to a lower grade which supported the fact that Plaintiff "also believe[d] [he was] incapable of performing at [his] current grade level."[9] Plaintiff resigned that same day.

---

[5]Doc. No. 61-4.

[6]*Id.*

[7]*Id.*

[8]Doc. No. 61-5.

[9]*Id.*

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds.[10] The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[11]

A court must view the facts in the light most favorable to the party opposing the motion[12] and may not "weigh the evidence and determine the truth of the matter . . . ."[13] The moving party must "identify portions of the record that demonstrate the absence of a genuine dispute over material facts."[14] It can do this "by presenting affirmative evidence that negates an element of the nonmoving party's claim or by demonstrating 'an absence of evidence to support the nonmoving party's case.'"[15] If the moving party meets this burden, "the nonmoving party must 'make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"[16] Only disputes over facts that

---

[10] Fed. R. Civ. P. 56.

[11] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[12] *Van Gorder v. Grand Trunk Western Railroad, Inc.*, 509 F.3d 265, 268 (6th Cir. 2007).

[13] *Anderson*, 477 U.S. at 249.

[14] *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

[15] *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

[16] *Id.*

may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.[17]

## III. DISCUSSION

Because Plaintiffs' claims are based on indirect evidence, they must be analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green.*[18] Under this analysis, a plaintiff must first establish a *prima facie* case of discrimination. Once a plaintiff meets this initial threshold, a presumption that the employer "unlawfully discriminated against the employee" arises.[19] The burden of production then shifts to the employer, who must articulate some legitimate, nondiscriminatory reason for the employment decision.[20]

The Supreme Court has mandated that the determination that a defendant has met its burden of production cannot be accomplished by assessing the credibility of the reason given by the defendant for its decision;[21] therefore, once the defendant articulates a "legitimate, nondiscriminatory reason for its decision," the presumption raised by the *prima facie* case of discrimination is rebutted and "drops from the case."[22] However, at all times in this analysis, the ultimate burden of production remains with the plaintiff,[23] and once the defendant has met its burden, the plaintiff must have "a fair opportunity to show that [the employer's] stated reasons

---

[17]*Anderson*, 477 U.S. at 249.

[18]411 U.S. 792 (1973).

[19]*St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993).

[20]*McDonnell Douglas*, 411 U.S. at 802.

[21]*Hicks*, 509 U.S. at 509.

[22]*Id.* at 507.

[23]*Id.*

4

for [the employment decision was] in fact pretext,"[24] or that the proffered reasons for the employer's action were not true.[25]

Plaintiff asserts that he was discriminated against based on age, disability, and gender. However, he has failed to present a *prima facie* case to support any of these allegations.

**A.     Age**

As for his age discrimination claim, Plaintiff has failed to establish that he qualified for the job he held.[26]  Rather than address this issue, Plaintiff's response focuses on the fact that Defendant knew or should have known his age.  He also proposes a conspiracy theory regarding Defendant's plan to hire him and immediately set him up to fail so they could fire him.

However, the undisputed facts are that Plaintiff was neither qualified for his job, nor meeting his employer's legitimate expectations.  Plaintiff applied for, and was hired for, a GS 12 position.  He reported to work on June 4, 2012, but just a few weeks later, on June 27, 2012, he requested to be downgraded to a GS 9 position.[27]  Since Plaintiff's position was for either a GS 11 or GS 12, Defendant considered moving him to a G 11 but believed he was "not going to cut it" even at that level.[28]  Defendant noted that Plaintiff "is running scared now because he knows that he cannot perform the duties of the job. (He cannot even type -- and I don't mean 40 WPM,

---

[24]*McDonnell Douglas*, 411 U.S. at 804.

[25]*Hicks*, 509 U.S. at 508.

[26]*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002) (To establish a prima facie case of age discrimination, a plaintiff must show: "(1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances that support an inference of discrimination.").

[27]Doc. No. 70-5.

[28]*Id.*

I mean finger typing!)."[29]  On July 20, 2012, Plaintiff again asked to be downgraded to GS 9. Additionally, Plaintiff has admitted that "GS 12 Senior Auditor was a tall mountain to climb" and that the job's current auditing practices were far more advanced than anything he dealt with in the 1980s and 1990s.[30]  He also conceded that the June 28 performance evaluation noting that he needed to focus on completing his task on time "was very fair."  Finally, Plaintiff admitted that Defendant's "judgment was correct in not wanting to hire [him]" based on his qualifications.[31]  Plaintiff has provided no evidence to rebut that fact that he was not qualified for the job.  In fact, he admits that he was not qualified.

**B.    Disability**

Plaintiff is a "10% disabled Veteran" based on an elbow injury sustained in the 1960s. However, Plaintiff cannot establish a *prima facie* case of disability discrimination because he cannot establish that he was "qualified for the job, with our without reasonable accommodation."[32]  Notably, Plaintiff's elbow disability has nothing to do with his inability to perform his job.  In fact, he admitted that the condition did not prevent him from performing any part of his job.[33]  For the same reasons set out above, the undisputed facts indicate that Plaintiff was not qualified for the position, with or without reasonable accommodation.

---

[29]*Id.*

[30]Doc. No. 61-7.

[31]*Id.*

[32]*Jones v. Potter*, 488 F.3d 397, 404 (6th Cir. 2007) (To establish a *prim facie* case of disability discrimination, he show "that (1) that he is disabled, (2) that he is otherwise qualified for the job, with or without reasonable accommodation, (3) that he suffered an adverse employment action, (4) that his employer knew or had reason to know of his disability, and (5) that, following the adverse employment action, either he was replaced by a nondisabled person or his position remained open.").

[33]Doc. No. 61-18.

### C. Gender

Regarding his reverse-gender discrimination claim, Plaintiff "bears the heightened burden of demonstrating that he was intentionally discriminated against despite his majority status."[34] He must "establish the first prong of a *prima facie* case by showing 'background circumstances [to] support the suspicion that the defendant is that unusual employer who discriminates against the majority.'"[35] He presented no evidence on this issue. Furthermore, he failed to present any evidence that he "was treated differently than similarly situated employees of a different [gender]."[36]

### D. Pre-text

Even assuming that Plaintiff could make a *prima facie* case, he has failed to establish that Defendant's legitimate, nondiscriminatory reason for termination. To establish pretext, he must show that Defendant's proffered reason: "(1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct."[37]

Defendant contends that Plaintiff was terminated base on both his inappropriate behavior at work and inability to perform the functions of his job. Although Plaintiff disputes that he acted inappropriately at work, he does not dispute that he could not perform his job. Again, Plaintiff has conceded that he could not perform the job, which defeats any argument that Defendant's legitimate, nondiscriminatory reason was a pretext for discrimination.

---

[34]*Nelson v. Ball Corporation*, 656 Fed Appx. 131, 134 (6th Cir. 2016) (quoting *Murray v. Thistledown Racing Club, Inc.*, 770 F.2d 63, 67 (6th Cir. 1985)) (internal quotes omitted).

[35]*Romans v. Michigan Dept. of Human Services*, 668 F.3d 826, 837 (6th Cir. 2012) (quoting *Zambetti v. Cuyahoga Cmty. Coll.*, 314 F.3d 249, 255 (6th Cir.2002)).

[36]*Id.*

[37]*Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 526 (6th Cir.2008).

### D. Retaliation

After he resigned, Plaintiff filed an EEOC complaint and Defendant was aware of the complaint by August 21, 2012.[38] On November 23, 2012 -- three months after resigning -- Plaintiff applied for a GS-7/9 Auditor position at the same Nashville office from which he had just resigned. On November 13, 2012, Defendant was notified that his application had been review, he was qualified, and his name had been referred to the employing agency for consideration.[39] However, once the personnel at the Nashville office noticed Plaintiff's name on the list of candidates for the job, it took the steps to have him removed based on his previous performance and conduct issues.[40] He was removed from the list on April 18, 2013 because he was "not suitable for [the] position based on a review of [his] background"[41] which revealed "performance and conduct issues."[42] Plaintiff claims he was removed from the list in retaliation.

"To prevail on a retaliation claim, a plaintiff must 'establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer.'"[43] That means that Plaintiff has present evidence that a reasonable jury could find that Defendant would have rehired Plaintiff if he had not filed a complaint with the EEOC. He has presented none. In fact, it is clear from the undisputed facts that Defendant's would not have rehired him, for the same

---

[38]Doc. No. 70-5.

[39]*Id.*

[40]Doc. No. 70-7.

[41]Doc. No. 70-6.

[42]Doc. No. 70-7.

[43]*E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 769 (6th Cir. 2015) (quoting *University of Texas Southwestern Medical Center v. Nassar*, 133 S. Ct. 2517, 2534 (2013)).

reasons they were going to terminate him in the first place -- his inappropriate work behavior and inability to perform the functions of his job.

Furthermore, when Plaintiff was asked why he thought he was taken off the referral list, he did not say that it was in retaliation for filing an EEOC complaint. Instead, he said Defendant "did not want to give an old male an opportunity to train and qualify as an . . . auditor" and Defendant did not want him to be eligible for federal insurance for life.[44]

## CONCLUSION

Based on the findings of fact and conclusions of law above, Defendant's Motion for Summary Judgment (Doc. No. 60) is GRANTED. This case is DISMISSED with prejudice.

IT IS SO ORDERED this 4th day of April, 2017.

/s/ Billy Roy Wilson
UNITED STATES DISTRICT JUDGE

---

[44]Doc. No. 70-6.